UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONI BROWNING, OBO
WAYNE BROWNING,

                  Plaintiff

v.

COMMISSIONER OF
SOCIAL SECURITY,

             Defendant.

_____/

Civil Action No.: 18-10755
Honorable Paul D. Borman
Magistrate Judge Elizabeth A. Stafford

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 15, 18]

Plaintiff Joni Browning, on behalf of her deceased husband, Wayne Browning,[1] appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision violated the treating physician rule

_____

[1] References to Browning refer to the original claimant, Wayne Browning, unless otherwise specified.

and thus **RECOMMENDS** that:

- Browning's motion [ECF No. 15] be **GRANTED**;

- the Commissioner's motion [ECF No. 18] be **DENIED**; and

- the matter be **REMANDED** under sentence four of 42 U.S.C. §
  405(g) for further consideration consistent with this report and
  recommendation.

## I.    BACKGROUND

### A.    Browning's Background and Disability Applications

Born October 8, 1962, Browning was 51 years old, an individual closely approaching advanced age, when he submitted his application for disability benefits in September 2014.[2]  [ECF No. 10-2, Tr. 12, 20].  At the January 18, 2017 hearing, Browning amended his alleged disability onset date to the DIB application date. [*Id.*, at Tr. 12].

After the hearing, during which Browning and a vocational expert (VE) testified, the ALJ found that Browning was not disabled.  [ECF No. 10-2, Tr. 12-22, 107-142].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-4]. Browning timely filed for judicial review.  [ECF No. 1].

---

[2] Browning applied for SSI on August 19, 2016.

**B.    The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).[3]  Second, if the claimant has not had a severe impairment or a combination of such impairments[4] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past

---

[3] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[4] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

relevant work.  *Id.*  At the final step, the Commissioner reviews the

claimant's RFC, age, education and work experiences, and determines

whether the claimant could adjust to other work.  *Id.*  The claimant bears

the burden of proof throughout the first four steps, but the burden shifts to

the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health &*

*Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Browning was not

disabled.  At the first step, he found that Browning had not engaged in

substantial gainful activity after September 15, 2014.  [ECF No.10-2, Tr.

14].  At the second step, he found that Browning had the severe

impairment of "degenerative disc disease of the lumbar spine with disc

bulges, degenerative joint disease of the shoulders, osteoarthritis,

avascular necrosis, rheumatoid arthritis, mild upper trunk plexopathy."  [*Id.*,

Tr. 15].  He found Browning's depression to be a non-severe impairment.

[*Id.*].  Next, the ALJ concluded that none of his impairments, either alone or

in combination, met or medically equaled the severity of a listed

impairment.  [*Id.*, Tr. 16].

Between the third and fourth steps, the ALJ found that Browning had

the RFC to perform light work;

> lifting up to 20 pounds occasionally; lifting and carrying up to 10
> pounds frequently; standing/walking for about 6 hours in an 8-

4

hour work day, with normal breaks; occasional pushing and pulling; occasional foot control operation; never climbing ladders, ropes or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching, crawling; never reaching overhead; frequent bilateral handling of objects; frequent bilateral fingering; must avoid all exposure to excessive vibration; must avoid all use of hazardous moving machinery; must avoid all exposure to unprotected heights.

[ECF No. 10-2, Tr. 16]. At step four, the ALJ found that Browning was not capable of performing his past relevant work as a construction worker. [*Id.*, Tr. 20]. At the final step, after considering Browning's age, education, work experience, RFC and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Browning could perform, including positions as inspector, packager and bench assembler. [*Id.*, Tr. 21].

## II.  ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

5

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Here, the ALJ afforded the opinion of treating physician Basim Towiq, M.D., little weight, finding it to be inconsistent with the overall evidence of record. [ECF No. 10-2, Tr. 20]. Browning argues that the reasons cited by the ALJ do not justify discounting Dr. Towiq's opinion. The Court agrees.

## A.

Browning's right shoulder condition was well documented. In September 2014, an x-ray suggested, and an MRI confirmed, avascular necrosis in the right shoulder. [ECF No. 10-7, Tr. 420-23]. The MRI report noted extensive bone marrow edema and reactive synovitis, suggesting "an acute component to this avascular necrosis." [*Id.*. Tr. 423]. Subcoracoid impingement with tendinosis, along with subcapularis and labral tears were noted as possible or likely. [*Id.*] After non-surgical treatment failed, Browning underwent an arthroscopic capsular release for the shoulder in September 2015. [*Id.*, Tr. 443-45]. Surgeon Sidney Martin, M.D., noted very limited range of motion in the shoulder, along with a "frayed" superior labrum and rotator cuff. [*Id.,* Tr. 444].

6

Following the September 2015 procedure, Browning complained of increased pain and paresthesia in the shoulder.  [ECF No. 10-12, Tr. 1194-96].  A February 2016 physical examination by pain management specialist Matthew Hettle, M.D., showed paresthesia, atrophy in the right bicep and tricep and weakness in manual muscle testing.  [*Id.*, Tr. 1199]. The EMG to evaluate these symptoms revealed upper trunk plexopathy.  [*Id.*, Tr. 1195].

Dr. Towfiq, Browning's primary care physician, completed a physical residual functional capacity questionnaire in July 2016, identifying Browning's diagnoses as avascular necrosis in his right shoulder, osteoarthritis, depression and multiple lumbar disc bulges. [ECF No. 10-12, Tr. 1190].   Dr. Towiq opined that Browning could occasionally lift objects weighing less than 10 pounds, rarely lift or carry objects weighing 10 pounds, but never lift or carry anything heavier than that; he could sit for 10 minutes at a time, for a total of two hours per day; he could stand for five to 10 minutes at a time for a total of two hours per day; he would require a sit-stand option; and he could rarely twist, crouch, stoop or climb ladders or stairs. [*Id.*, Tr. 1191-92].  Dr. Towiq believed that Browning's condition would cause him to be absent from work as many as four days per month. [*Id.*, Tr. 1193].  Most significantly here, Dr. Towiq opined that Browning had significant limitations with reaching, handling or fingering, restricting him to

7

grasping, turning and twisting objects with his right hand no more than 24 minutes in an eight-hour workday.  He likewise limited Browning's right-side fine manipulations and reaching.  [*Id.*, Tr. 1193].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.  In all cases, a treating physician's opinion is entitled to great deference.  *Id.*

Here, the ALJ afforded Dr. Towiq's opinion little weight, finding it to be inconsistent with the overall evidence of record.  [ECF No. 10-2, Tr. 20].  The ALJ focused on Dr. Towiq's opinion that Browning could rarely lift 10 pounds or engage in postural activities, would be off-task 5% of the workday, could sit and stand two hours of an eight-hour workday and would miss more than four workdays per month.  [*Id.*]. The ALJ found these

limitations inconsistent with the evidence, "including only mild upper trunk plexopathy, [Browning's] self-reporting of doing 'pretty well' after the initial surgery and a post-operative examination in August 2016 where he indicates he is doing great." [*Id.*, citing ECF No. 10-12, Tr. 1179, 1194; ECF No. 10-14, Tr. 1404].   The ALJ did not specifically address the portion of Dr. Towiq's opinion that restricted Browning's handling, fingering and reaching with his right arm.

The treating physician's rule aims to ensure that claimants understand the disposition of their cases, and that there can be meaningful review. *Rogers*, 486 F.2d at 242-43.  The Sixth Circuit requires thus requires that the ALJ's reasoning for discounting the opinion of a treating physician be "supported by the evidence in the case record, and…be sufficiently specific to make clear to any subsequent reviewers the reasons for the weight the adjudicator gave to the treating source's medical opinion." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5).  A failure to explain precisely how those reasons affected the weight accorded to the treater's opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record.  *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F.App'x 852, 860-861 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243).

9

The ALJ's references to Browning's self-reports of doing "pretty well" and "great," generically, are not meaningful explanations for discounting the weight given to Dr. Towiq's opinion about the limitations of Browning's right arm use. And the ALJ's only other explanation—a single report in a significant medical record of mild upper trunk plexopathy—fairs no better.

**B.**

The ALJ not only failed to give meaningful reasons for giving diminished weight to Dr. Towiq's opinion; he also failed to properly analyze Dr. Towiq's opinion under the regulations. The ALJ was required to determine if Dr. Towiq's opinion was well-supported by medically acceptable clinical and diagnostic evidence, **and** not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29 (emphasis added). To properly assess a treating physician's opinion, an ALJ must analyze it under both prongs of the controlling weight test. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Here, the ALJ did not assess Dr. Towiq's opinion that Browning required significant restrictions on the use of his right arm alongside the clinical and diagnostic evidence. This Court's review of the administrative record reveals that Browning's right arm symptoms were consistent with the results of both the 2014 MRI showing avascular necrosis, and the 2016

10

EMG study revealing upper branch plexopathy.  [ECF No. 10-7, Tr. 420-23;

ECF No. 10-12, Tr. 1195].  A 2015 arthroscopic examination of the

shoulder revealed very limited range of motion; the shoulder was described

as "angry" with "quite a bit of synovitis," and the superior labrum and rotator

cuff were described as "frayed." [ECF No. 10-7, Tr. 444].  Dr. Hettle noted

atrophy in the right bicep and tricep and paresthesia in the right arm. [ECF

No. 10-12, Tr. 1199]. An examining nurse practitioner wrote that Browning's

shoulder exhibited decreased range of motion, tenderness, bony

tenderness, effusion, crepitus and pain.  [ECF No. 10-13, Tr. 1319].  X-rays

taken before Browning's September 2016 shoulder replacement revealed

the collapse of the humeral head; Dr. Martin's surgical notes described a

very flat and delaminated humeral head and the total absence of cartilage

on the glenoid (thereby requiring a total shoulder replacement). [ECF No.

10-14, Tr. 1405, 1414].

The ALJ instead concluded that Dr. Towiq's opinion failed the

second prong by describing it as being inconsistent with the

characterization of Browning's upper branch plexopathy as mild and with

comments Browning made during post-procedure examinations.  In so

concluding, the ALJ relied on fragments of the record rather than the record

as a whole.  Substantial evidence cannot be based on fragments of the

evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

First, although Browning's upper branch plexopathy was periodically noted as mild, Dr. Hettle acknowledged that it was unknown how much the plexopathy contributed to Browning's symptoms. [ECF No. 10-12, 1179, 1194]. The ALJ's selective emphasis on the plexopathy also ignored the comorbid symptoms of Browning's avascular necrosis. And as noted, the ALJ cited two banal and subjective comments that Browning was feeling "pretty well" and "great" after surgical procedures, but the ALJ did not explain how those comments were inconsistent with Dr. Towiq's opinion that Browning needed significant right arm limitations. Besides, Browning's self-reported statements of progress, in context, cannot be considered substantial evidence.

First, Browning's wife contradicted his report that he was doing "pretty well" after the arthroscopic procedure. [ECF No. 10-12, Tr. 1194]. "She says he's never good." [*Id.*]. And any progress was short-lived, as evidenced by later examinations and treatments Browning received. [ECF No. 10-12, Tr. 1194, 1201,1206].

Browning's self-report of "doing great" shortly after his shoulder replacement was met with his surgeon "repeatedly" warning him against "rambunctious" activity that could jeopardize the newly-reconstructed joint. [ECF No. 10-14, Tr. 1404].  In other words, Dr. Martin warned him that he needed to restrict his activity. [*Id.*].

The ALJ also did not address the consistency between Dr. Towiq's findings and diagnostic evidence (x-rays, MRIs, EMG study, arthroscopic examination).  Nor did he discuss the consistency of Dr. Towiq's findings with those of the specialists examining Browning.   Both Drs. Martin and Hettle's clinical examinations and testing revealed objective findings consistent with Browning's symptoms and Dr. Towiq's right arm use restrictions.  [ECF No. 10-7, 443-445; ECF No. 10-12, Tr. 1194-99].

Thus, the ALJ did not give good reasons for not giving controlling weight to Dr. Towiq's opinion and did not analyze the opinion in the manner required by the regulations.  Remand for proper consideration of Dr. Towiq's opinion is warranted.

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Browning's motion [ECF No. 15] be **GRANTED**; that the Commissioner's motion [ECF No. 18] be **DENIED**; and that this matter be **REMANDED** for

further consideration under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: February 13, 2019                        United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

15